******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ECKER, J., concurring in the judgment. I agree with the majority that the plaintiff, Jon L. Schoenhorn, is not entitled to relief because his action for a writ of mandamus is an impermissible collateral attack on a sealing order imposed in a different action. I write separately because I have serious doubts about whether the justiciability doctrine applied by the majority, which it borrows from *Valvo* v. *Freedom of Information Commission*, 294 Conn. 534, 543–45, 985 A.2d 1052 (2010), and its progeny, provides the appropriate analytic framework to decide these cases. I also question whether the majority's analysis pertains to the subject matter jurisdiction of the trial court or whether, instead, it is a prudential limitation on the trial court's authority to grant relief. Because these issues have not been raised by the parties or briefed and argued on appeal, I concur in the judgment affirming the trial court's dismissal of the plaintiff's action.

As the majority correctly points out, in *Valvo*, this court held that a trial court does not have the "authority to overturn sealing orders issued by another trial court in a separate case" because "[i]t would wreak havoc on the judicial system to allow a trial court . . . to second-guess the judgment of another trial court in a separate proceeding involving different parties, and possibly to render an inconsistent ruling." Id., 543, 545. Indeed, it would be "completely unworkable" and unnecessary to permit such a collateral attack "when a direct challenge to the original ruling can be made by any person at any time in the trial court with continuing jurisdiction . . . ." Id. Notably, in *Valvo*, we characterized the plaintiff's collateral challenge as moot and "nonjusticiable because no practical relief [was] available . . . ." Id., 548; see also *Mendillo* v. *Tinley, Renehan & Dost, LLP*, 329 Conn. 515, 527, 187 A.3d 1154 (2018) ("we agree with the defendants that the . . . case is nonjusticiable because no practical relief is available to the plaintiff insofar as the allegations in the declaratory judgment complaint demonstrate that it is nothing more than a collateral attack on the protective order imposed by the trial court [in a different case]").

The concern I have is that the inability of a trial court to grant practical relief is a necessary but not a sufficient condition to render a case moot. A court's inability to grant practical relief in any particular case can arise for countless reasons, most of which have nothing to do with mootness or justiciability. To illustrate the point, a claim for damages against the state is subject to dismissal for lack of subject matter jurisdiction due to sovereign immunity, but the case is neither moot nor nonjusticiable.[1] More broadly, practical relief is unavail-

able as a matter of law in every case that is subject to dismissal on the basis of a dispositive motion. The most obvious example is a case in which a plaintiff's complaint fails to state a claim on which relief can be granted. No one would call such a case moot or nonjusticiable, even though it cannot be adjudicated because no relief can be granted. In order to determine whether a case is moot, and therefore not justiciable, we must ascertain *why* no practical relief can be granted.

Mootness, like the related justiciability doctrines of standing and ripeness,[2] is intended to ensure that "Connecticut courts will rule only on live controversies— i.e., those in which the parties before us require resolution." *CT Freedom Alliance, LLC* v. *Dept. of Education*, 346 Conn. 1, 27, 287 A.3d 557 (2023). Standing, ripeness, and mootness are "gatekeeper doctrines," each of which "regulates a different dimension of entrance to the . . . courts. The law of standing considers whether the plaintiff is the proper person to assert the claim, the law of ripeness ensures that the plaintiff has not asserted the claim too early, and the law of mootness seeks to prevent the plaintiff from asserting the claim too late." (Footnote omitted.) E. Lee, "Deconstitutionalizing Justiciability: The Example of Mootness," 105 Harv. L. Rev. 603, 606 (1992); see also *Warshak* v. *United States*, 532 F.3d 521, 525 (6th Cir. 2008) (claim is not justiciable "when it is filed too early (making it unripe), when it is filed too late (making it moot) or when the claimant lacks a sufficiently concrete and redressable interest in the dispute (depriving the plaintiff of standing)"). In one paradigmatic scenario, a case becomes moot "during the pendency of an appeal, [when] events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits . . . ." (Internal quotation marks omitted.) *Loisel* v. *Rowe*, 233 Conn. 370, 378, 660 A.2d 323 (1995). Mootness "fundamentally [is] temporal . . . ." *Gardner* v. *Mutz*, 962 F.3d 1329, 1337 (11th Cir. 2020).

In the present case, the fatal defect in the plaintiff's claim is not temporal in nature; his action for a writ of mandamus was not filed too early or too late to obtain practical relief. The defect has nothing to do with *when* the plaintiff's action was filed. Nor is *who* filed the action the impediment to adjudication. To the contrary, the controversy seems to be very much alive, adverse, and contested: the plaintiff wants access to the sealed transcript and the defendant, Melodie Moss, the chief court reporter in the judicial district of Stamford-Norwalk, refuses to release the transcript unless and until it is unsealed. The problem, instead, is that our collateral attack doctrine holds that relief is available only in the case in which the sealing order was filed.[3] The singular method and means by which relief must be sought (i.e., by filing a motion to intervene and open the family case to obtain an order vacating the sealing order) do not appear to me to affect the nature of the controversy

between the parties. The problem seems not to involve either justiciability or jurisdiction but, instead, implicates the important prudential interests of maintaining "fairness to all interested parties, the orderly administration of justice, and [the] consistency and stability of judgments." Footnote 8 of the majority opinion.

The proper characterization of the defect at issue in the present case as jurisdictional, nonjusticiable, and/or prudential is not merely a matter of semantics without practical effect. The United States Supreme Court has cautioned against the "profligate" and indiscriminate description of all limitations on judicial authority as " 'mandatory and jurisdictional' "; *Arbaugh* v. *Y & H Corp.*, 546 U.S. 500, 510, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006); and for good reason. Such "drive-by jurisdictional rulings"[4] should be avoided precisely because labeling an issue as jurisdictional can have profound procedural implications that could affect the course, and even the outcome, of a case.[5] See *MOAC Mall Holdings*, *LLC* v. *Transform Holdco*, *LLC*, U.S.    , 143 S. Ct. 927, 936, 215 L. Ed. 2d 262 (2023) ("The 'jurisdictional' label is significant because it carries with it unique and sometimes severe consequences. An unmet jurisdictional precondition deprives courts of power to hear the case, thus requiring immediate dismissal. *Hamer* v. *Neighborhood Housing* [*Services*] *of Chicago*, [    U.S.    , 138 S. Ct. 13, 17, 199 L. Ed. 2d 249 (2017)]. And jurisdictional rules are impervious to excuses like waiver or forfeiture. [*Boechler*, *P.C.* v. *Commissioner of Internal Revenue*,    U.S.    , 142 S. Ct. 1493, 1497, 212 L. Ed. 2d 524 (2022)]. Courts must also raise and enforce them sua sponte. [*Fort Bend County* v. *Davis*,    U.S.    , 139 S. Ct. 1843, 1849, 204 L. Ed. 2d 116 (2019)].").[6]

The plaintiff has challenged neither the mootness rubric as the basis for dismissal nor the characterization of the *Valvo* rule as jurisdictional in nature, and, therefore, I need not resolve those issues in this opinion. I raise them for future consideration in the appropriate case. In the meantime, I agree with the majority that, regardless of whether the defect in the plaintiff's action for a writ of mandamus is denominated jurisdictional, justiciable, or something else, the bottom line is that the plaintiff is precluded from collaterally attacking another court's sealing order in the present action. Accordingly, I concur in the judgment.

[1] In the federal courts, the doctrines of justiciability and jurisdiction are not synonymous. As the United States Supreme Court has explained, "there is a significant difference between determining whether a federal court has jurisdiction of the subject matter and determining whether a cause over which a court has subject matter jurisdiction is justiciable." (Internal quotation marks omitted.) *Powell* v. *McCormack*, 395 U.S. 486, 512, 89 S. Ct. 1944, 23 L. Ed. 2d 491 (1969); see also *Baker* v. *Carr*, 369 U.S. 186, 198, 82 S. Ct. 691, 7 L. Ed. 2d 663 (1962) (noting that "[t]he distinction between the two grounds [jurisdiction and justiciability] is significant"); *Rinsky* v. *Cushman & Wakefield, Inc.*, 918 F.3d 8, 18 (1st Cir.) (cautioning against confusion of "the very different concepts of subject matter jurisdiction and justiciability"), cert. denied,    U.S.    , 140 S. Ct. 455, 205 L. Ed. 2d 272 (2019);

*Oryszak* v. *Sullivan*, 576 F.3d 522, 527 (D.C. Cir. 2009) (Ginsburg, J., concurring) ("[t]hat the nonjusticiability of a claim may not be waived does not render justiciability a jurisdictional issue, and this court has been careful to distinguish between the two concepts"); *Gross* v. *German Foundation Industrial Initiative*, 456 F.3d 363, 376 (3d Cir. 2006) ("[q]uestions of justiciability are distinct from questions of jurisdiction, and a court with jurisdiction over a claim should nonetheless decline to adjudicate it if it is not justiciable"). The justiciability doctrine, which derives from the case or controversy requirement in article three, § 2, of the United States constitution; *Flast* v. *Cohen*, 392 U.S. 83, 94, 88 S. Ct. 1942, 20 L. Ed. 2d 947 (1968); "limit[s] the business of federal courts to questions presented in an adversary context" and ensures that "the federal courts will not intrude into areas committed to the other branches of government." Id., 95.

Whether deliberate or by oversight, the conceptual distinction between justiciability and jurisdiction, to my knowledge, has not yet been recognized by the courts of this state. Our cases typically provide that "[j]usticiability . . . implicate[s] a court's subject matter jurisdiction and its competency to adjudicate a particular matter." (Internal quotation marks omitted.) *Chapman Lumber, Inc.* v. *Tager*, 288 Conn. 69, 86, 952 A.2d 1 (2008). Our reason for equating justiciability with jurisdiction is not obvious and warrants further consideration, particularly "because our state constitution contains no case or controversy requirement like that found in article three of the United States [c]onstitution . . . [and] unlike the federal courts, we do not concern ourselves with the question of whether our [justiciability] principles—e.g., standing, ripeness, mootness and political question—derive from the constitution itself or from prudential considerations." (Citation omitted; internal quotation marks omitted.) *CT Freedom Alliance, LLC* v. *Dept. of Education*, 346 Conn. 1, 26–27, 287 A.3d 557 (2023). The fact that our justiciability doctrine has "evolved under [the] common law"; (internal quotation marks omitted) id., 27; and is not rooted in constitutional limitations, raises the question whether it truly "implicate[s] a court's subject matter jurisdiction and its competency to adjudicate a particular matter." (Internal quotation marks omitted.) *Connecticut Coalition for Justice in Education Funding, Inc.* v. *Rell*, 295 Conn. 240, 254, 990 A.2d 206 (2010).

[2] In addition to mootness, standing, and ripeness, justiciability also includes the political question doctrine. See *Connecticut Coalition for Justice in Education Funding, Inc.* v. *Rell*, 295 Conn. 240, 254, 990 A.2d 206 (2010) ("justiciability comprises several related doctrines, namely, standing, ripeness, mootness and the political question doctrine" (internal quotation marks omitted)). "The political question doctrine itself is based on the principle of separation of powers . . . ." (Internal quotation marks omitted.) Id., 255.

[3] The present case was filed in the judicial district of Hartford, but, to obtain relief, the plaintiff must file a motion to intervene and open the family case in which the transcript was sealed in the judicial district of Stamford-Norwalk. The problem is not one of venue, but, even if it were, it is well established that "[v]enue does not involve a jurisdictional question but rather a procedural one . . . ." (Internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *New London*, 282 Conn. 791, 814, 925 A.2d 292 (2007).

[4] *Steel Co.* v. *Citizens for a Better Environment*, 523 U.S. 83, 91, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998).

[5] I venture no opinion about whether any practical effects would flow from a determination that the defect in the present case was nonjurisdictional. It is clear that the action cannot be maintained as filed.

[6] I add one word of caution. The significance of the jurisdictional label should not be overlooked, but neither should it be overstated. " '[C]alling a rule nonjurisdictional does not mean that it is not mandatory.' " *Donnelly* v. *Controlled Application Review & Resolution Program Unit*, 37 F.4th 44, 55–56 (2d Cir. 2022), quoting *Gonzalez* v. *Thaler*, 565 U.S. 134, 146, 132 S. Ct. 641, 181 L. Ed. 2d 619 (2012).